IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CLAYTON HESTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-11-120-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

### OPINION AND ORDER

The claimant Clayton Hester requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the decision of the Commissioner decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on June 30, 1960 and was forty-eight years old at the time of the administrative hearing. He has a seventh grade education and past relevant work as a maintenance supervisor, apartment maintenance worker, apartment maintenance supervisor, and interior painter (Tr. 23). The claimant alleges that he has been unable to work since July 1, 2005, because of injuries and pain his back, left and right shoulders, and neck (Tr. 133).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on June 11, 2007. The Commissioner denied his application. ALJ Deborah L. Rose held an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 2, 2009. The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the additional physical limitations that he can only occasionally climb, balance, stoop, kneel, crawl, and crouch and never work above

shoulder level (Tr. 20). While the ALJ concluded that the claimant was unable to return to his past relevant work, she found that there was work the claimant could perform in the national economy, *i. e.*, arcade attendant, parking lot attendant, semiconductor assembler, and clerical mailer (Tr. 24). Thus, the ALJ concluded that the claimant was not disabled (Tr. 24).

## Review

The claimant contends that the ALJ erred by failing to properly analyze the opinion of claimant's treating physician Dr. James Odor, M.D. The Court agrees.

The claimant suffered a work-related injury to his back and shoulder in July 2003 when he fell off of a ladder and landed on his back (Tr. 201). One month after his injury, the claimant presented with complaints of pain in his lower back and legs and burning in his upper back (Tr. 213). At that time, the claimant reported that he could not do anything for over 15 minutes without pain and that he was experiencing pain on the left side which radiated down to his left leg (Tr. 213). In January 2005, the claimant was evaluated by Dr. James Odor, M.D. and a written report of that examination reveals that claimant had constant pain in his back with "intermittent stabbing pains and popping and grinding sensations in his lower back" (Tr. 433). Dr. Odor's initial impression was that claimant had lumbar disc disease with ongoing lumbar radicular syndrome and a left shoulder injury (Tr. 434). Dr. Odor recommended that claimant be restricted to no repetitive bending, twisting or lifting greater than ten pounds (Tr. 434). Findings from a discography shortly thereafter revealed that claimant had minimal anterolisthesis and a

small bulge eccentric to the right with a midline annular tear resulting in minimal narrowing of the right neural foramen at L4-5, minimal retrolisthesis at L3-4 and a small bulge slightly indenting the ventral thecal sac and a dehydrated and narrowed intervertebral disc at T10-11 (Tr. 427).  Based on those results, Dr. Odor recommended proceeding with a two level lumbar fusion and stabilization procedure which was performed on April 7, 2005 (Tr. 455-59).  The claimant then began reporting for bimonthly follow up evaluations, and Dr. Odor removed the hardware in his back that went along with the fusion on April 6, 2006 (Tr. 446-47).  In connection with his workers' compensation claim, the claimant underwent a functional capacities evaluation in June 2006, which was signed and reviewed by Dr. Odor, and Dr. Odor submitted a written report based on that evaluation to the Workers' Compensation Court (Tr. 440).  In that written report, Dr. Odor wrote that the claimant "provided a consistent performance . . . but also demonstrated 3 out of 5 unexpected results[,]" and Dr. Odor stated that his permanent restrictions were that claimant should perform no repetitive bending, twisting, or lifting greater than ten pounds, and claimant should have the ability to alternative sitting and standing at his discretion (Tr. 440).

     The claimant was examined by state physician Dr. Shelia Newcomb on October 17, 2007 (Tr. 505-10).  Dr. Newcomb found that while the claimant did have tenderness to palpation in his bilateral paravertebral musculature at T-10 to L-4, he also had normal range of motion (Tr. 505-10).  State reviewing physician Dr. Janet D. Rodgers, M.D. completed a Residual Functional Capacity Assessment on  in which she found that

claimant could occasionally lift/carry 20 pounds, frequently lift/carry ten pounds, stand/walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday (Tr. 512-517).  Dr. Rodgers also opined that claimant could only occasionally climb, balance, stoop, kneel, crouch, or crawl and never reach overhead (Tr. 513-14).

Medical opinions from the claimant's treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527.  *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are:  (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  *Watkins,* 350 F.3d at

1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001).  Finally, if the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300 [quotation omitted].

The ALJ gave "little weight" to the evaluation of treating physician Dr. Odor.  She stated that Dr. Odor "indicated that the overall test results were unreliable because of the claimant's level of effort" and that the claimant had shown he "was able to frequently lift 20 pounds from floor to waist level and to occasionally lift 40 pounds" (Tr. 22).  But the ALJ's characterization of Dr. Odor's findings is not entirely supported by the record.  Dr. Odor *did* state that the claimant's test results were unreliable, but not because of the claimant's level of effort, which Dr. Odor indicated was "consistent."  In fact, Dr. Odor wrote that the test results were categorized as unreliable because three out of five of the findings were unexpected (Tr. 440).  Further, Dr. Odor accounted for that unreliability in offering his opinion of claimant's permanent restrictions which were that claimant could not engage in repetitive bending, twisting, or lifting greater than ten pounds and must have the ability to alternate sitting and standing at his discretion (Tr. 440).

Moreover, the ALJ wholly failed to apply any of the factors set forth in 20 C.F.R. § 404.1527 in her analysis of Dr. Odor's opinion regarding the claimant's restrictions.  *Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to

controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5.  The ALJ also failed to adequately explain why the opinion of state reviewing physician Dr. Janet D. Rodgers deserved greater weight than the opinion of treating physician Dr. Odor.  A "treating physician's report should be favored over that of consulting physician who merely reviews the records."  *Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987), *citing Whitney v. Schweiker*, 695 F.2d 784, 769 (7th Cir. 1982).

      Because the ALJ failed to properly analyze Dr. Odor's opinion, the decision of the Commissioner must be reversed and the case remanded for proper analysis by the ALJ.  If this results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

      The Court finds that incorrect legal standards were applied by the ALJ, and the decision of the Commissioner is thus not supported by substantial evidence. The decision of the Commissioner is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

      **DATED** this 26th day of September, 2012.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma